Ex parte Alberto YBARRA.

No. 59505.

Court of Criminal Appeals of Texas,
Panel No. 3.

Dec. 20, 1978.

Rehearing En Banc Denied Feb. 28, 1979.

Julio A. Garcia, Laredo, for appellant.

Charles R. Borchers, Dist. Atty., Sharon S. Trigo, Alonzo Z. Laurel, Jr. and Olivero E. Canales, Asst. Dist. Attys., Laredo, for the State.

Before DOUGLAS, TOM G. DAVIS and VOLLERS, JJ.

OPINION

VOLLERS, Judge.

This is an appeal from a denial of relief by the County Court at Law of Webb County to petitioner's application for writ of habeas corpus contending that the statute under which he is being prosecuted is unconstitutional as applied to him.

Appellant was arrested and charged with being a party to the operation of a motor vehicle over the public highways of the State of Texas, within the county of Webb, while engaged in the business of transporting persons for compensation or hire without first obtaining a certificate of public convenience and necessity from the Texas Railroad Commission, in violation of Article 911a, V.A.C.S. After a hearing, the trial court refused to grant petitioner relief.

It is the petitioner's contention that because prior acts of the legislature attempting to regulate persons engaged in the business of being a "travel bureau" have been declared unconstitutional, see *Ex parte Martin,* 127 Tex.Cr.R. 25, 74 S.W.2d 1017 (1934); *Ex parte Talkington,* 132 Tex.Cr.R. 361, 104 S.W.2d 495 (1937), the present act in question is unconstitutional because the petitioner is in the business of operating a travel bureau.

The petitioner's testimony raised the issue that he had operated a travel bureau in the city of Laredo for some four years under the name of Ybarra Brothers where people wanting to go to San Antonio could walk in, and he would put them in touch with people driving to San Antonio. It was his testimony that he did not enter into the negotiations for price of those services or control the terms of the contract between the passenger and the driver. Petitioner contended that he merely brought the two

into contact with each other and received $1.75 per person as a commission for his services. He further testified that he did not know Aurelio Espinoza Saucedo, the driver who he was charged with aiding and abetting to operate a motor vehicle over the public highways while engaged in the business of transporting persons for compensation or hire, without obtaining a certificate of public convenience and necessity from the Railroad Commission.

On cross-examination it was established that a sign at petitioner's office advertised "trips to San Antonio," that petitioner did not personally solicit drivers for these trips, but sometimes they were the same drivers who had driven before. It was also established that cars left for San Antonio from the area of appellant's office every three or four hours and that he understood that the charge was $7 or $8 for each passenger. Appellant also required the drivers to show a chauffeur's license, ask if they had liability insurance, and knew that they carried fire extinguishers in their vehicles. The drivers often used vans or stationwagons to transport passengers.

The State presented evidence that on May 20, 1977 Laura Pruneda went to appellant's place of business and found an office "like a bus stop." When she said she wanted to go to San Antonio an employee at the office told her to go outside. There she found a van waiting for passengers and found that the vehicle could not leave for San Antonio until it had a full load. There were a couple of people waiting on the inside of the office. The driver of the van kept going in and out of appellant's office. This witness paid the driver $5 for the trip, and when the van left there were 10 passengers in it. After leaving the office they stopped and picked up another passenger. This vehicle was stopped at the border patrol checkpoint on Interstate Highway 35 near Laredo. Officer Dracoulis of the Department of Public Safety testified that he participated in the investigation of the vehicle which was carrying Mrs. Pruneda when it was stopped. It was driven by Aurelio Espinoza. The vehicle was subsequently determined to be registered to Quick Auto Sales, Charles A. Ibarra, agent. Appellant had previously testified that his son, Carlos Ybarra had a used car lot in San Antonio by the name of Quick Auto Sales.

Officer Dracoulis also testified that he called appellant's office, and the phone was answered with the announcement "Trips to San Antonio and Chicago." He determined also that the frequency of the departures was "every hour on the hour." Officer Dracoulis and Mike Greer, an auto theft investigator, went to appellant's place of business and took pictures of a sign on the front of the building advertising trips to Dallas, Houston and Chicago.

Border Patrolman Mendes testified that on April 6, 1977, while working the checkpoint on Interstate Highway 35 near Laredo he stopped three Ybarra Brothers travel vehicles within an eight hour period. One of the vehicles was a van with the same registration as the van which was stopped on May 20. There were 13 persons in the vehicle, and it was driven by a Mr. De La Garza.

The trial court made findings of fact that appellant had been engaged in the business of soliciting for compensation and hire fares and trips of the paying public from Laredo to San Antonio, and that he did not have a certificate of public convenience and necessity from the Texas Railroad Commission as required by Article 911a, V.A.C.S. Such findings of fact are supported by the record in this cause.

Section 1(c) of Article 911a, defines motor bus company as meaning every person "owning, controlling, operating or managing any motor propelled passenger vehicle not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, whether operating over fixed routes or fixed schedules, or otherwise." Section 2 declares that all motor bus companies as defined in the Act are common carriers and subject to regulation by the State of Texas. It prohibits their operation except in accordance with the provisions of the Act.

The right to operate motor buses has been held to be purely permissive. See *Railroad Commission v. Metro Bus Lines*, 144 Tex. 420, 191 S.W.2d 10 (1945); *Railroad Commission v. Interstate Motor Freight Line*, 77 S.W.2d 1100 (Tex.Civ.App.—Waco 1935, no writ); *Railroad Commission v. Shupee*, 57 S.W.2d 295 (Tex.Civ.App.—Austin 1933, no writ); affirmed at *Shupee v. Railroad Commission*, 123 Tex. 521, 73 S.W.2d 505 (Tex.1934); *Texas Motor Coaches v. Railroad Commission*, 41 S.W.2d 1074 (Tex.Civ.App.—Austin 1931, no writ). It would appear that it is a legitimate exercise of the legislative authority to regulate the operation of motor vehicles using the highways of the State of Texas for profit. See *All American Bus Lines v. Hawkins*, 188 S.W.2d 992 (Tex.Civ.App.1945); *Ex parte Sterling*, 122 Tex. 108, 53 S.W.2d 294 (Tex.Cr.App.1932).

It does not appear that the appellant in this cause takes issue with the constitutionality of this Act, as applied to persons owning, operating or managing passenger vehicles, but merely contends that it is unconstitutional as applied to him because he merely operates a travel bureau and has nothing to do with the operation of the motor vehicles which transport the passengers from Laredo to San Antonio. In bringing this criminal action it is the State's contention that the operation of a "travel bureau" by appellant is merely a sham, and that he in fact was a party to the transportation of passengers for hire on the public highways of this State. The findings of the trial court were to the effect that appellant did more than merely act as a travel bureau, and these findings are supported by the record. This Court will not permit the determination of the sufficiency of the evidence to sustain a conviction under this Act by means of habeas corpus, and we do not rule upon whether or not this evidence shows that appellant is guilty as charged. However, the authorities upon which the appellant relies are inapplicable because the evidence does not support appellant's contention that he merely acted as a travel bureau.

We hold, therefore, that under the facts of this case Article 911a, V.A.C.S. is not unconstitutional as applied to appellant. The trial court properly denied relief to appellant upon his application for writ of habeas corpus.

The judgment of the trial court is affirmed.